## BIRD v. STATE

[No. 282, September Term, 1962.]

*Decided May 14, 1963.*

*Motion for rehearing filed June 13, 1963, denied June 14, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Juanita Jackson Mitchell* and *W. A. C. Hughes, Jr.,* for appellant.

*James P. Garland, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *James W. McAllister, State's Attorney* and *Assistant State's Attorney,* respectively, for Baltimore City, on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The appellant, Adela Garcia Bird, a native of Puerto Rico residing in Maryland, was convicted in the Criminal Court of Baltimore of assault with intent to murder and was sentenced to a term of not more than ten years in the Institution for Women. But the court, on the suggestion of the appellant, suspended the sentence on the condition that "she leave and go back to Puerto Rico * * * and remain there for at least [a] ten year period." The appeal is from both the judgment and sentence.

In December of 1961, Allen H. Best, the victim and prosecuting witness, who was living apart from his wife, went to see her at the appellant's apartment (where she was staying) for the purpose of delivering her mail and discussing with her the property settlement she sought in the divorce proceeding she had instituted against her husband. In the apartment at the time besides the appellant, there were Sandra Best, the estranged wife, and Maureen Kaiser, an acquaintance of the appellant.

On reaching the apartment, the prosecuting witness rapped on the door and when the appellant appeared he asked to see his wife but made no effort to enter the apartment. The appellant closed the door and the estranged wife came into the vestibule of the apartment. He asked her to get her coat and go outside the apartment building with him, and she went back inside the apartment. From this point the testimony is in conflict.

Appellant testified that the prosecuting witness came into the apartment and that, after she had warned him a number of times to stop his advance toward her, she shot him. This was confirmed by the estranged wife. The prosecuting witness admitted that the appellant told him to stop at least three times, but he denied having any more than his nose and one foot over the threshold. He also admitted that on prior occasions he had threatened the appellant with physical harm and that he had brought her into police court on a show cause order (apparently for trespassing) where appellant had been warned to stay out of the Best home. The only other witness to the shooting (the acquaintance of the appellant), who had not paid much attention to the affair until she heard the safety on the revolver click, testified that the prosecuting witness was never inside the apartment and that at most he had his foot, shoulder and one hand therein. According to the appellant she had not meant to harm the victim and was only "trying to frighten him to leave."

The bullet made only a superficial wound in the fleshy part of the right side of the victim's chest. The appellant called an ambulance and the police immediately. The bullet was removed at a hospital and the victim was discharged four days later and returned to work.

The appellant, having plead not guilty, was tried by the court, sitting without a jury, on an indictment charging assault with intent to murder and simple assault and battery. A general verdict of guilty was entered at the conclusion of the trial. Prior to imposing the ten year sentence and conditionally suspending it, the court indicated that it was going to impose a sentence of three years.

On appeal it is contended (i) that the verdict was clearly

erroneous and contrary to the evidence and (ii) that the banishment imposed by the suspended sentence was beyond the power of the court and void.

### (i)

The first contention presents no problem.

The crime of assault with intent to murder is a statutory offense. See Code (1957), Art. 27, § 12. And although the statutory provision does not define the elements of the crime, it is necessary that there be proof of an assault and that it was with an intent to murder. *Webb v. State*, 201 Md. 158, 93 A. 2d 80 (1952). Intent involves the element of malice and must be such as would lead to a charge of murder if death should ensue. *Marks v. State*, 230 Md. 108, 185 A. 2d 909 (1962). In the instant case, the appellant admitted the assault and the intent to kill was inferable from the use of a deadly weapon directed toward a vital part of the body. See *Wimbush v. State*, 224 Md. 488, 168 A. 2d 500 (1961), and the cases cited at p. 489. The specific intent to take life need not be shown if the assault was committed under such circumstances that, if death had ensued, the crime would have been murder in either the first or second degree. *Wimbush v. State, supra; Hall v. State*, 213 Md. 369, 131 A. 2d 710 (1957); *Webb v. State, supra*.

Where, as here, the trial court tries the case without a jury, this Court will review the case upon both the law and evidence, but the judgment will not be set aside on the evidence "unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." Maryland Rule 886 a. "The question is not whether we *might* have reached a different conclusion from that of the trial court, but whether the trial court had before it sufficient evidence upon which it could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged". *Cooper v. State*, 220 Md. 183, 192, 152 A. 2d 120, 124 (1959). Since one of the functions of the lower court is to determine the credibility of the witnesses, it may, in judging credibility, disbelieve exculpatory statements made by the defendant. *Lewis v. State*, 225 Md. 474, 171 A. 2d 244 (1961).

It is clear that the court believed the testimony of the disinterested witness and the prosecuting witness and disbelieved the testimony of the appellant and the estranged wife, and we cannot say that it was in error in so doing. The remaining contentions concerning the defenses of the appellant to the charge of assault with intent to murder are part of the principal contention involving the question of intent and require little additional consideration. With respect to the defense of her person, the court did not accept the testimony of the appellant and found in effect that the appellant, and not the prosecuting witness, was the aggressor. As to the defense of her habitation, the court apparently believed the testimony of the disinterested witness that the prosecuting witness was never in the apartment of the appellant. We think the record shows that neither finding was clearly erroneous.

(ii)

The second contention presented, concerning the power of the court to banish the appellant, is more difficult.

Code (1957), Art. 27, § 639, provides in part:

> "The courts may suspend sentence generally or for a definite time, and may make such orders and impose such terms as to costs, recognizance for appearance, or matters relating to the residence or conduct of the convicts as may be deemed proper * * *."

The question therefore is whether banishment from the United States to Puerto Rico, imposed as a condition to the suspension of the prison term, was proper. We think it was not.

In 15 Am. Jur., *Criminal Law*, § 453, at p. 112, it is said:

> "In the states of the United States, a sentence banishing one convicted of crime from the state is generally held to be beyond the power of the court. It is impliedly prohibited by public policy. At least, such a sentence is invalid when not authorized by statute. Likewise, the suspension or reduction of a sentence or condition that the convicted person leave the state or a certain county of the state is void."

438

See also 5 Wharton, *Criminal Law & Procedure* (12th ed.), §
2213; 24B C.J.S., *Criminal Law*, § 1991. Although there are
some older cases to the contrary, the texts are in accord with
the more recent weight of authority holding that a sentence
of banishment or the suspension of a sentence conditioned on
banishment is void. See the cases collected in the annotation
in 70 A.L.R. 100. We hold therefore that the suspension of
sentence conditioned on banishment was beyond the power of
the trial court and void, but we see no reason why the in-
validity of the conditionally suspended sentence should affect
a proper judgment entered on the verdict of guilty. The prin-
ciple of the cases is that it is not necessary to grant a new trial
and that the proper procedure is to remand the case to the
trial court for resentence or to strike out that part of the sen-
tence which is void without disturbing the remainder of it. In
*State v. Baker*, 36 S. E. 501 (S.C. 1900), it was held that the
invalidity did not extend beyond the sentence of banishment.
In *People v. Baum*, 231 N. W. 95 (Mich. 1930), the case was
remanded to the trial court with instructions to legally sen-
tence the defendant. And in *State v. Doughtie*, 74 S. E. 2d 922
(N.C. 1953), the case was remanded to the lower court for
the imposition of a proper sentence. But in *People v. Lopez*,
253 Pac. 169 (Cal. App. 1927), and in *Ex Parte Scarborough*,
173 P. 2d 825 (Cal. App. 1946), only the void part of the
sentence was stricken and the remainder of the sentence was
allowed to stand.

The State contends that this Court should strike out the il-
legal condition and let the ten year sentence stand. We do not
agree. The *Lopez* and *Scarborough* cases might be authority
for such action, but in this case, where the trial court would
have sentenced the appellant to a term of only three rather
than ten years had the sentence of banishment not been im-
posed, we think the case should be remanded to the trial court
for the imposition of a proper sentence under the provisions of
Code (1957), Art. 5, § 17, in the event the appellant is still
within the State of Maryland or shall return or be returned
here to be resentenced. Section 17 (of Art. 5) recognizes the
right of this Court to remand for resentencing where an er-

roneous sentence was entered below although it may be that we are not restricted to that procedure.

> *Case remanded for imposition of a proper sentence; one-half of the costs shall be paid by appellant; and the other one-half shall be paid by the Mayor and City Council of Baltimore City.*