## MARGARET NANCY FINNEGAN *v.* STATE OF MARYLAND

[No. 284, September Term, 1967.]

*Decided June 19, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Arnold Blank* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 3 July 1967 the appellant entered a plea of guilty to possession of lottery tickets in the Circuit Court for Prince George's County. A pre-sentence investigation was made and on 7 August 1967 she was sentenced to imprisonment for a term of one year, the execution of the sentence was suspended and she was "placed on probation, under the supervision of the Department of Parole and Probation, for a period of three years, upon the special condition that she remain with her children and care for them, and that she co-operate in the fullest degree with the State's Attorney's Office from Prince George's County in the discovery of and prosecution of any persons of which she may

have knowledge in connection with the offense with which she was charged." Before imposing the sentence and the conditions of probation the court said to the appellant:

"THE COURT: In any event, this would appear to be one of those cases where we can take a chance on you without losing too much, because if you revert to any kind of criminal activity you are going to be compelled to return to court, serve the sentence that the Court imposes on you today, as well as whatever you get for the new offense. And another special condition of your probation is going to be that if anybody from the State's Attorney's Office calls you, either by night or by day, you are to go down to that office and co-operate with them in the prosecution of anybody that they have picked up that you know anything about. Do you understand that?

THE DEFENDANT: Yes, sir: I do.

THE COURT: The very first time the State's Attorney's Office reports to the Court you have failed to co-operate with them fully, in identifying or testifying against any of your former business associates, off you go to prison. Do you understand that?

THE DEFENDANT: Yes, sir."

On 7 September 1967 at a hearing in open court the court found her to be in violation of probation and it ordered the suspension of her sentence stricken. She was "remanded to the custody of the Sheriff to be delivered into the custody of the Commissioner of Correction to serve the unexecuted portions of the sentence heretofore imposed."

During the hearing Shirley Sollers testified that she had filed a suit for divorce against her husband, Charles Sollers, in the Circuit Court for Montgomery County and that about 18 November 1966 she had testified in that action that the appellant was an employee of her husband. She said that her husband was engaged in bookmaking, that the appellant (referred to by her as Peggy) and another girl named Michele had started

to work for him about March or April 1966, that she called his office about that time and the appellant answered the telephone, that she had seen the appellant in the company of her husband and Michele and had seen her on three different occasions going in and coming out of the apartment building from which her husband conducted lottery operations. The appellant had told the police that she worked in the gambling operations with Stanley, Chet and Vic and that she had only a casual relationship with Charles Sollers, whom she understood to be in the plumbing business, serving him in her capacity as a waitress at Oak Grove Inn. Mrs. Sollers did not know anyone by the name of Stanley, Chet or Vic "that might have been running a numbers operation at the same location" as her husband. At the conclusion of the evidence presented by the State the appellant's counsel argued that the appellant maintained that she did not know the identity of the persons who employed her in the gambling operations except by description and first name, which information she had given to the police. The record then shows the following:

"THE COURT: Mr. Stephens, all of this is beside the point. I told her that she was to co-operate with these men in the prosecution of the people who were her associates in the numbers business; that she was supposed to identify them and appear to testify against them. Now she says she didn't know any of them except these nameless or faceless people, and it turns out that she certainly did know the man she was working for, that she was in and out of his apartment, and she called him and made 20 or 30 calls to his right-hand man.

MR. STEPHENS: She states that she never worked for that individual.

THE COURT: I know. That is what bothers me. It is pretty obvious that she did work for him. There isn't any question about it.

MR. STEPHENS: Well, if that is the situation, why hasn't there been an arrest?

THE COURT: I don't know, but I am not concerned

with that. Probably because your client refuses to identify and appear and testify against him.

Why on earth she should persist in protecting somebody making the biggest amount of money at the risk of going to prison herself, I don't know.

MR. STEPHENS: This Mrs. Sollers will testify admittedly.

THE COURT: Is your client prepared to get on the stand and deny what that woman said?

MR. STEPHENS: I believe she is, yes, Your Honor.

THE COURT: Your standing up there arguing won't help her too much in this present state of affairs, I can tell you.

Whereupon,

MARGARET NANCY FINNEGAN

defendant herein, was called as a witness in her own behalf, and, having been first duly sworn, was examined and testified as follows:

THE COURT: Now, sir, I want to ask you before you start this whether you have advised your client of the penalties for perjury?

MR. STEPHENS: Will you step down?

Your Honor, may I speak to her although she is under oath,

THE COURT: Yes, indeed.

Go back down.

MR. STEPHENS: Could we request a short recess?

THE COURT: Yes, sir. I think you had better explain it to her pretty clearly because if it becomes apparent to me that she is lying to me, she is going to have not only the State's Attorney responsible for her prosecution but it is going to be conducted under the order of the Court."

After a brief recess counsel informed the court that the appellant elected not to testify. The court said, "I think that is a prudent election under the circumstances."

The appellant presents the question on appeal from the order revoking probation, "Did the conduct of the trial Judge in stat-

ing his belief of the evidence given by the State coupled with his threat of a charge of perjury made to the Appellant prior to Appellant's testifying constitute such prejudice and bias as to deny Appellant a fair and impartial trial and/or so intimidate appellant as to prevent her testifying and thereby deny her due process of law?"

The Court of Appeals has held that a parole cannot be revoked without giving the parolee a hearing, and that this is a requirement of due process of law. *Swan v. State,* 200 Md. 420, 425. It follows that the question of whether the hearing complied with the requisites of due process may be reviewed by this Court on appeal.[1] The hearing on the inquiry of whether or not the conditions of probation have been violated is not required to be a trial in the strict or formal sense. *Warden v. Palumbo,* 214 Md. 407, 411. The demands of due process will be satisfied if the probationer is extended a reasonable opportunity to defend himself against the charge that he has violated the conditions upon which his probation was granted. *Jett v. Superintendent,* 209 Md. 633, 640. In the instant case we think the appellant could reasonably take the remarks of the lower court to mean that it had found at the conclusion of the evidence offered by the State that she had worked for Charles Sollers in the gambling operation, that she knew the identity of those who employed her other than by first name and description and that if she took the stand and testified to the contrary or asserted that the testimony of Mrs. Sollers was not correct she would

---

1. It is established that an appeal lies from the revocation of a suspended sentence and the striking out of probation by the lower court. *Coleman v. State,* 231 Md. 220, 222. The question of whether the terms of probation have been violated is largely one of fact but also includes the construction of the terms of the suspension which were made known to the defendant and by which he was to be guided in his conduct. "Such questions, while primarily within the discretion of the trial judge, are not wholly so, and are reviewable, if only for the purpose of determining whether that discretion has been abused in any way, or whether an erroneous construction has been placed by the trial judge on the conditions of the parole." *Swan v. State, supra,* 425-426; *Welborn v. Warden,* 2 Md. App. 351, 354.

be prosecuted for perjury, not only at the instance of the State's Attorney but under order of the Court. We cannot declare, under the circumstances here, that the court meant by what it said only that the State had made out a *prima facie* case or, as the State urges, that it was merely expressing "an opinion on the evidence as it stood." Compare *Holtman v. State,* 219 Md. 512, 518; *Clark v. State,* 2 Md. App. 756. We feel that the court placed a choice squarely before the appellant. She could elect not to testify and serve the sentence of one year or she could testify and, unless she corroborated the evidence presented by the State, be prosecuted for perjury with the possibility of an additional sentence. By the posture of the choice confronting her we agree with the trial court that her election not to testify was "a prudent election under the circumstances." However, we cannot say that her election was freely and voluntarily made. Of course, if she testified and committed perjury she would be properly subject to prosecution, but she was entitled to testify if she chose and should not have been deterred from so doing, as she obviously was, by the clear threat of prosecution for perjury if her testimony was contrary to what the lower court had patently determined to be the facts before hearing such explanations she may have advanced, without weighing such testimony she may have offered and without the opportunity to judge her credibility. It may be that had the appellant testified the determination of the lower court would not have changed, but in the circumstances shown by the record before us we feel that the appellant was not extended a reasonable opportunity to defend herself against the charge that she had violated the conditions upon which her probation was granted and therefore the demands of due process were not satisfied.[2] We hold that she be granted a new hearing.

In view of our holding we need not decide whether the lower court abused its discretion in revoking probation with regard to

---

2. See *Wroten v. State,* 2 Md. App. 410, in which we noted in finding that the lower court had not abused its discretion in revoking probation, that the probationer "was given full opportunity by the court to satisfactorily explain" his alleged violations of probation.

whether the appellant in fact violated the terms of her probation. We have stated that such question on review includes the construction of the terms of probation which were made known to the appellant and by which she was to be guided in her conduct. We note that the State stipulated that it had "no information which would reflect that she has been involved in any criminal activities since that date (when she was placed on probation) and that her conduct and work has been, and matters to that effect, have been exemplary. We have no information to show otherwise, other than the matter before the Court that she failed to cooperate as a special term of her probation." In any event, whether this "special term" of her probation was a proper one cannot be now considered. The validity of conditions of probation as set forth in the original sentence may be determined on appeal from the original judgment, *Bird v. State,* 231 Md. 432, 437-438, but not on appeal from revocation of probation, because to do so would, in effect, permit a circumvention of Md. Rule, 1012, which requires an appeal to be taken in thirty days.[3]

---

3. Md. Code (1967 Repl. Vol.) Art. 27, § 639 provides in relevant part:

"The courts may suspend sentence generally or for a definite time, and may make such orders and impose such terms as to * * * matters relating to the residence or conduct of the convicts as may be deemed proper; * * *."

While the conditions of probation are usually within the discretion of the trial court, its power to impose conditions is not unlimited. For example, the suspension of sentence conditioned on banishment is beyond its power and void. *Bird v. State, supra,* 438. And "[b]y 'conduct' is to be understood the personal behavior or deportment of the convict, and consequently does not embrace the payment of a monthly fine or penalty." *Kelly v. State,* 151 Md. 87, 100. The questions whether the condition imposed in the instant case—that the appellant "co-operate in the fullest degree with the State's Attorney's Office from Prince George's County in the discovery of and prosecution of any persons of which she may have knowledge in connection with the offense with which she was charged"—properly concerned "the personal behavior or deportment" of the appellant or, even if it did, whether it was sufficiently definite so that the appellant could reasonably be guided in her conduct thereby, being not properly before us we do not decide them.

404

See *Coleman v. State*, 231 Md. 220, 223; Md. Code (1968 Repl. Vol.) Art. 5, § 13.

> *Order striking suspension of sentence of August 7, 1967 reversed; case remanded for a new hearing; costs to be paid by County Commissioners of Prince George's County.*