[No. 42995. En Banc. April 25, 1974.]

THE STATE OF WASHINGTON, *on the Relation of Carl E. Brundage, Respondent,* v. DONALD A. EIDE, *as Judge, et al.; Appellants,* THE CITY OF AUBURN, *Respondent.*

---

Christopher T. Bayley, Prosecuting Attorney, and Richard D. Eadie, Deputy, for appellants.

David A. Leen of Legal Services Center (Seattle), for respondents.

UTTER, J.—Carl E. Brundage, defendant below, challenged the constitutionality of an order entered by Judge Donald A. Eide of Aukeen District Court. This order required him to pay the fee of an attorney appointed to defend him at the time of arraignment as an indigent defendant, if he could later do so without financial burden, within 6 months after the arraignment. A summary judgment in favor of Brundage was entered by the trial court and the state appeals.

The issue before us is whether the defendant's Sixth Amendment right to assistance of counsel is unconstitutionally impaired by the district court order. We hold it is and sustain the entry of the summary judgment.

The defendant was charged in justice court with shoplifting and third-degree assault, misdemeanors with maximum penalties of 6 months in jail or a $500 fine or both. At his arraignment he was found to be indigent at that time and counsel was appointed. An order was entered, however, stating: "In light of reasonable attorney's fees being charged in this area for cases of a similar nature, a person is indigent if he/she could not pay or make arrangements to pay such a fee within six (6) months from the date of his/her arraignment without such fee payment being a bur-

den upon such person to the extent he/she would not be able to meet his/her necessary living expenses." The court then entered an order at the conclusion of the indigency hearing appointing a defense attorney to be paid at the rate of $35 an hour and ordered "[t]hat if the defendant finds employment of sufficient income during the next six months he shall repay the City of Auburn the fees paid in this case by the City of Auburn to Mr. Long." The effect of the district court's order was to allow the determination of Brundage's indigency at a time subsequent to his arraignment and appointment of counsel.

Brundage sought a writ of prohibition to prevent such a condition attaching to the employment of counsel. The superior court granted a summary judgment in his favor on his writ of prohibition on the grounds that the order infringed his Sixth Amendment rights and his rights under article 1, section 22 of the Washington Constitution.

The record conclusively establishes Brundage's inability to afford counsel at the time of arraignment. He had an eighth grade education, was unemployed for 7 months during which he received $57 a week unemployment benefits prior to his trial, with 4 remaining weeks of eligibility. He had no assets of substance. His wife was 19, had never been employed and had given birth to a child 3 weeks before his trial.

We have previously stated what factors should be considered at the time the question of appointment of counsel is considered. In *Morgan v. Rhay*, 78 Wn.2d 116, 119-20, 470 P.2d 180 (1970), we said: "To qualify for appointed counsel, it is not necessary that an accused person be utterly destitute or totally insolvent. Indigence is a relative term, and must be considered and measured in each case by reference to the need or service to be met or furnished. In connection with the constitutional right to counsel, it properly connotes a state of impoverishment or lack of resources which, when realistically viewed in the light of everyday practicalities, effectually impairs or prevents the employment and retention of competent counsel." The fac-

tors to be examined in determining the accused's ability to employ counsel include the "seriousness of the charge, prevailing and applicable bar association fee schedules, the availability and convertability of any personal or real property owned, outstanding debts and liabilities, the accused's past and present history, earning capacity and living expenses, his credit standing in the community, his family independence, and any other circumstances which may impair or enhance the ability to advance or secure such attorney's fees as would ordinarily be required to retain competent counsel."

This view is consistent with the federal definition of a criminal defendant eligible for counsel at government expense as a person who is "financially unable to obtain counsel." 18 U.S.C. § 3006A(b).

■ The sixth amendment to the United States Constitution imposes upon the state the obligation of furnishing counsel to indigent criminal defendants at no cost to the defendant and applies to all cases, whether misdemeanor or felony, where a defendant may be subjected to the loss of liberty if determined to be guilty of the particular charge against him. *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). A person cannot be influenced to surrender a constitutional right by imposing a penalty on its use. *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965); *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968).

The district court's order, if limited to the time of appointment of counsel, stated a proper standard. By extending the time to consider whether the defendant is able to pay, beyond the time of appointment of counsel, several problems are created which we believe unconstitutionally burden the defendant in the free exercise of his right to counsel.

The American Bar Association's *Standards Relating to Providing Defense Services* (approved draft 1968), chaired

by Chief Justice Warren Burger, recommended against a requirement of reimbursement for defense costs. In their section on eligibility for assistance, at page 58, the recommendation was that "Reimbursement of counsel or the organization or governmental unit providing counsel should not be required, except on the ground of fraud in obtaining the determination of eligibility." In explaining its recommendation, the project noted that a number of jurisdictions impose an obligation upon the accused to pay a fee for services rendered, when and if he is able and that his obligation was often enforced as a condition of probation. The report noted "[t]he practice raises serious constitutional questions: whether due process is denied if the accused is compelled to pay after having been acquitted or if he is not informed of his obligation at the time that counsel is provided; whether a waiver of counsel is valid if it is made because of the accused's unwillingness to undertake such an obligation; whether conditioning probation on such payment amounts to imprisonment for debt . . . Apart from these constitutional objections, the practice of requiring payment from funds not available at the time of the determination of eligibility may serve to discourage the acceptance of counsel by those who are most in need and least able to appreciate the practical consequences of the imposition of such an obligation of reimbursement. Moreover, the amounts which can be collected under such a requirement are negligible, especially if the cost of collection is taken into account."

We believe the district court's order will have the effect of unnecessarily deterring an indigent misdemeanor defendant from exercising his right to counsel. Where attorney's fees of $35 an hour are accrued, an indigent defendant may well believe that the judge's offer to supply counsel is not a gratuitous offer of assistance. The ABA report's conclusion that this knowledge may serve to discourage the acceptance of counsel by those who are most in need and least able to appreciate the practical consequences of the imposition of such an obligation of reimbursement, is sup-

ported by the California Supreme Court in *In re Allen*, 71 Cal. 2d 388, 455 P.2d 143, 78 Cal. Rptr. 207 (1969). There the court examined the constitutionality of recouping, as a condition of probation, the costs incurred at an indigent defendant's trial. This practice, which was invoked after the criminal defendant was convicted, was found to be unconstitutional. The court noted, at page 391, "many indigent defendants will come to realize that the judge's offer to supply counsel is not the gratuitous offer of assistance that it might appear to be; that, in the event the case results in a grant of probation, one of the conditions might well be the reimbursement of the county for the expense involved. This knowledge is quite likely to deter or discourage many defendants from accepting the offer of counsel despite the gravity of the need for such representation . . ."

■ There are other constitutional infirmities in the procedure adopted by the district court judge. The defendant had no part in the initial negotiations regarding who his attorney would be or the amount per hour the attorney should be paid or a maximum sum available to compensate him. The effect of the district court's order in later imposing liability upon the defendant for the fee is to issue a "blank check" to counsel. This adds to the deterring effect upon a defendant to the acceptance of the appointment of counsel under such circumstances.

The absence of standards sufficient to enable the defendant to protect himself against arbitrary or discriminatory impositions of cost would also invalidate the procedure under the due process clause. *Giaccio v. Pennsylvania*, 382 U.S. 399, 15 L. Ed. 2d 447, 86 S. Ct. 518 (1966).

The only value asserted to counterbalance this very real possibility of a chilling effect on the defendant's Sixth Amendment right to counsel is the possibility that the city will be reimbursed for its costs. Reality has shown this is an unlikely occurrence. The Kansas statute before the court in *James v. Strange*, 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972), provided for automatic entry of judgment

against indigent defendants who did not repay the state for the costs of representing them within 60 days after the trial. The judgment was good for 5 years. The costs of providing defense services under this statute for 1 year in Kansas was $400,000. The amount recovered in almost 2 years of operation of the statute was only $17,000.

■ The apparent ineffectiveness of recoupment statutes raises a question as to the necessity of the district court's order in the present case. Legitimate objectives may not be pursued by means that needlessly chill the exercise of basic constitutional rights. The question is not whether the chilling effect is incidental rather than intentional but whether the effect is unnecessary and therefore excessive. *United States v. Jackson, supra.*

We are not persuaded by the state's argument in favor of the constitutionality of these statutes. They urge the procedure followed by the district court order was approved in dicta in *Rinaldi v. Yeager*, 384 U.S. 305, 16 L. Ed. 2d 577, 86 S. Ct. 1497 (1966). There a New Jersey statute requiring the prison wages of indigents whose appeals were unsuccessful to be withheld in order to pay the cost of furnishing them trial transcripts for their appeals, was held to be unconstitutional. The rationale was that there was no similar obligation imposed on indigents who were convicted but not in prison. The court disposed of the case on an equal protection argument under the Fourteenth Amendment, but stated, at page 309, "[w]e may assume that a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefited from county expenditures."

This conclusion was made without an analysis of the problems regarding appointment of counsel for indigent defendants and did not discuss the Sixth Amendment problems inherent in burdens on the appointment of counsel. The dicta in *Rinaldi* is also criticized in Comment, *Reimbursement of Defense Costs as a Condition of Probation for*

*Indigents,* 67 Mich. L. Rev. 1404, 1412 (1969), where the authors note:

> [The Supreme Court] cited as support a detailed study which indicated that some judges in one jurisdiction "require, as a condition of probation, that the convicted indigent repay the county's expenditure for his lawyer." The persuasiveness of the Court's statement, however, is undercut not only by the lack of analysis, but also by the fact that the study cited in support of that statement expressed grave doubts both as to the constitutionality and as to the wisdom of requiring reimbursement as a condition of probation.

(Footnotes omitted.)

In *State v. Fuller,* 12 Ore. App. 152, 504 P.2d 1393 (1973), Oregon upheld the constitutionality of a statute that allowed the sentencing court to impose, as a condition of probation, the requirement that a convicted defendant repay attorney's fees. The court rejected *In re Allen, supra,* and upheld the statutory requirement, without citation of cases to support its conclusions. The dissent in that case, by Justice Fort, which we find persuasive, recognized that Oregon law was indistinguishable from the Kansas statute voided in *James v. Strange, supra,* and concluded the reasoning in *In re Allen, supra,* was applicable.

The North Carolina Court of Appeals in *State v. Foust,* 13 N.C. App. 382, 185 S.E.2d 718 (1972), concluded probation could be conditioned upon repayment of defense attorney's fees, regardless of ability to repay, without having a chilling effect on the exercise of the right to counsel. The court held that the imposition of these conditions of probation would serve a useful rehabilitative purpose. The two Law Review articles cited by the court in *Foust,* however, reach opposite conclusions from those the court cited and the case, in addition, relies upon *Rinaldi v. Yeager, supra,* for support. We have previously indicated our belief that the dicta in *Rinaldi* does not apply.

The judgment is affirmed.

FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.

HALE, C.J., concurs in the result.

Petition for rehearing denied July 31, 1974.