[No. 1202-3.    Division Three.    November 1, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. FREDERICK ALLEN McGEE, *Petitioner*.

F. *Lawrence Taylor, Jr.* (of *Gordon, Ripple & Taylor*), for petitioner.

*Robert F. Patrick, Prosecuting Attorney,* for respondent.

McINTURFF, J.—Petitioner seeks a writ of certiorari to review the trial court's order granting the expenditure of public funds for costs on appeal, including filing fees, preparation of transcript and statement of facts, *but denying payment of attorney's fees.*

The court's findings evidenced that petitioner is an apprentice plumber with a net income of approximately $440 per month, and monthly expenditures of about $400 per month. The court further found that the $40 per month excess income would be sufficient to retain counsel to represent him on appeal.

There is no evidence that the petitioner attempted to retain an attorney and was unable to because of a lack of funds, or that he was unable to borrow money that could be repaid from the $40 excess income above his monthly expenditures.

█ The first issue is whether the court may apportion costs of an indigent's appeal between the public and the accused. The answer is found in CAROA 46(d)(2)(i), which in pertinent part provides:

> [T]he superior court shall make findings as to the defendant's ability to pay and enter an order authorizing the expenditure of public funds *for those costs allowable under CAROA 47 which the defendant cannot pay.*

(Italics ours.) CAROA 46(d)(2)(ii) contemplates that a petition for the expenditure of public funds may be denied "in whole or in part." Thus costs on appeal may be apportioned between the public and the accused if the trial court finds that the accused is financially able to pay costs of

counsel without causing substantial hardship to himself or his family.[1]

■ . Lastly, does the defendant qualify for appointed counsel? We answer in the negative. *Morgan v. Rhay,* 78 Wn.2d 116, 119-20, 470 P.2d 180 (1970), has given the guidelines for that determination:

> To qualify for appointed counsel, it is not necessary that an accused person be utterly destitute or totally insolvent. Indigence is a relative term, and must be considered and measured in each case by reference to the need or service to be met or furnished. In connection with the constitutional right to counsel, it properly connotes a state of impoverishment or lack of resources which, when realistically viewed in the light of everyday practicalities, effectually impairs or prevents the employment and retention of competent counsel. [Citations omitted.]
>
> In evaluating an accused person's ability to employ counsel, consideration must be given to such factors as the seriousness of the charge, prevailing and applicable bar association fee schedules, the availability and convertability of any personal or real property owned, outstanding debts and liabilities, the accused's past and present history, earning capacity and living expenses, his credit standing in the community, his family and dependents, and any other circumstances which may impair or enhance the ability to advance or secure such attorney's fees as would ordinarily be required to retain competent counsel. [Citations omitted.]

*Accord, State ex rel. Brundage v. Eide,* 83 Wn.2d 676, 521 P.2d 706 (1974); *O'Connor v. Matzdorff,* 76 Wn.2d 589, 594,

---

[1]CrR 3.1(d)(1) provides in part that "counsel shall be provided to any person who is financially unable to obtain one without causing substantial hardship to himself or his family." 18 USC § 3000A(b) allows appointment of counsel at public expense if one is "financially unable to obtain counsel." *See Report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice* 5-11 (1963); Comment, *Misdemeanants' Right to Counsel: A Retrospective View of Argersinger v. Hamlin,* 9 Gonzaga L. Rev. 169, 196-97 (1973); Note, *The Indigent's Right to an Adequate Defense: Expert and Investigational Assistance in Criminal Proceedings,* 55 Cornell L. Rev. 632, 644 (1970); *see generally* L. Silverstein, *Defense of the Poor* 115 (1965).

458 P.2d 154 (1969); *State v. Rutherford,* 63 Wn.2d 949, 389 P.2d 895 (1964); *see Hardy v. United States,* 375 U.S. 277, 289 n.7, 11 L. Ed. 2d 331, 84 S. Ct. 424 (1964) (Goldberg, J. concurring); Note, *Judicial Problems in Administering Court Appointment of Counsel for Indigents,* 28 Wash. & Lee L. Rev. 120, 121 (1971).

■ The trial court's findings are accorded great weight, but we do not accept them without due consideration. *Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963); *Morgan v. Rhay, supra.* The merits of each case must be measured individually, with a primary eye toward fairness to the accused and responsibility toward public funds.

Here, defendant retained counsel at trial, and that counsel has continued to represent the petitioner in his quest for public funds, both at the trial level and on this application for writ of certiorari. Although it may be assumed, there is nothing to indicate that present counsel would not continue to represent this defendant, and that financial arrangements could not be negotiated. Additionally, there is no showing that the defendant has sought or been denied credit by prospective lawyers or financial institutions. Petitioner's counsel stated in oral argument before this court that the comtemplated fee on appeal would be approximately $500 to $700. Although petitioner owns little property, there is no showing that he has any outstanding debts of significance, dependents, or any other circumstances which might preclude or impair his ability to employ counsel.

The philosophy of today's concept of justice is to make representation in the courts available to all, rich and poor alike. With this concept in mind, one must demonstrate that he has done all that he reasonably can to shoulder his costs of legal representation. This the petitioner has not done.

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Munson, J. (concurring specially)—I have signed the opinion in this case because I believe it correctly applies the law. However, in all deference to the present state of the law, indigency is not a fair criteria for determination of appointment of counsel in criminal cases. The administration of criminal justice would be better served if any accused person, desiring to utilize the services of legal counsel, paid at public expense, was allowed to do so. If such person did not want to avail himself of that service, he is then free to utilize his own resources. Counsel, appointed by the court, should not perform those services gratuitously. The legislative branch should appropriate monies for the payment of those services as they presently do for representation of indigents.

Those cases of questionable indigency are infrequent. However, the time spent in determining the issue of indigency, and a review of that determination, is disproportionate to the cost savings which would result if the issue of indigency was eliminated.

Petition for rehearing denied December 16, 1974.