GLORIA C. HAYNES *v.* STATE OF MARYLAND

[No. 656, September Term, 1974.]

*Decided May 5, 1975.*

The cause was argued before POWERS and LOWE, JJ., and JOHN C. ELDRIDGE, Associate Judge of the Court of Appeals, specially assigned.

*Chester Cohen, Assigned Public Defender,* for appellant.

*John P. Stafford, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and *James Sherbin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

In a court trial in the Criminal Court of Baltimore, Gloria C. Haynes, the appellant here, was convicted of assault and battery upon Perry William Stewart, as charged in the second count of an information filed against her. The trial judge found the appellant not guilty on the first count, which charged her with assault upon Stewart with intent to murder him. She was also found guilty of discharging a pistol in violation of a City ordinance.

Appellant was represented at the trial, as she is in this Court, by counsel appointed for her by the Office of the Public Defender.

Upon announcing its findings, the court suspended sentence generally on the City ordinance charge, and imposed sentence for the assault and battery, as follows:

> "Mr. Clerk, you can say that it is the judgment and sentence of this Court that Gloria C. Haynes, as the penalty for her offense, shall be committed to the Division of Correction for a period of ten years. The Court will suspend [the] final five years of the sentence, and she shall be placed on probation for a period of five years when she is released on parole.
>
> With respect to the initial five years of the

sentence, a further condition of probation is that she pay the court costs in this case. Are you privately employed?

MR. COHEN [Defense Counsel]: No, sir.

THE COURT: Further special condition is that she reimburse the State for counsels' fees of the Public Defender. Miss Haynes, are there any questions of your sentence? What it means is that you have five years' sentence, and the other five years are suspended. And after you are released on parole — you will be considered for parole after serving one-quarter of your sentence. If you violate that probation in any way, if you violate the terms of probation, you can be brought back before the Court, and if the Court finds that you have violated, then your probation can be stricken and you will be subject to serving the additional five years."

An appeal, in general terms, was filed on a caption listing both informations. In this Court only the judgment of conviction and sentence for assault and battery was argued. We shall affirm the judgment of conviction of violating the City ordinance without further comment.

Appellant contends that the evidence was not sufficient to support her conviction of assault and battery, that the court erred in not declaring a mistrial, and that the court erred in requiring her, as a condition of probation, to pay court costs and to reimburse the State for counsel fees of the Public Defender. The contention that the conditions of probation were improper was argued in the frame of reference of her constitutional right to counsel, and of the statutes and procedural rules implementing that right. But she has not been denied any constitutional or other right to counsel. Legal representation has been provided for her, and she has had the benefit of the services of an attorney for her trial and for this appeal. We assume that, in addition, the State has borne the entire cost of the case, including the transcript and the brief.

The contention that it was error to impose the conditions

of probation which the court did impose raises the question of the court's power to do so. If the validity of those conditions is to be questioned at all, it must be questioned now. In *Finnegan v. State,* 4 Md. App. ,396, 243 A. 2d 36 (1968), we said, at 403:

> "In any event, whether this 'special term' of her probation was a proper one cannot be now considered. The validity of conditions of probation as set forth in the original sentence may be determined on appeal from the original judgment, *Bird v. State,* 231 Md. 432, 437-438, but not on appeal from revocation of probation, because to do so would, in effect, permit a circumvention of Md. Rule, 1012, which requires an appeal to be taken in thirty days."

In *Coleman v. State,* 231 Md. 220, 189 A. 2d 616 (1963), the Court of Appeals ordered the correction of a docket entry to show that on a finding of violation of probation there was not a new sentence, but merely that the original sentence became effective. The Court went on to say, referring to the appellant, at 223:

> "He, of course, could not appeal from the original sentence in February, 1961, as the time limited for such an appeal had long since expired. Maryland Rule 812 a.
>
> * * *
>
> "We may add that appellant's argument in his brief is limited to a challenge as to the validity of the conditions of his probation as set forth in his original sentence. We do not answer these challenges here, because to do so, would, in effect, permit a circumvention of Rule 812 a, which requires an appeal to be taken within thirty days."

In suspending a part of the sentence imposed and specifying the terms of probation upon which the suspension was conditioned, the court was exercising that broad

authority contained in the statutes. Code, Art. 27, § 639 says, in part:

> "The courts may suspend sentence generally or for a definite time, and may make such orders and impose such terms as to costs, recognizance for appearance, or matters relating to the residence or conduct of the convicts as may be deemed proper * * * ."

Section 641A, somewhat repetitively, says, in part:

> "Upon entering a judgment of conviction, the court having jurisdiction, may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the courts deem proper. The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of five years."

We said, of both statutes, in *Watson v. State*, 17 Md. App. 263, 301 A. 2d 26, *cert. denied*, 268 Md. 754 (1973), at 274:

> "Whatever latitude the statutes repose in the trial judge, it remains, of course, fundamental that conditions of probation must be reasonable and have a rational basis. They must not be the product of arbitrariness or capriciousness. Moreover, the conditions imposed must be clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement."

In *Finnegan* we referred in a footnote, at 403, to *Kelly v. State*, 151 Md. 87, 133 A. 899 (1926), where the Court of Appeals, in a bastardy case, held that the powers of the trial court, "in the suspension of sentence, were explicitly limited to costs, recognizance for appearance, and matters relating

to the residence or conduct of the convict", and that "[b]y conduct is to be understood the personal behavior or deportment of the convict". The phrase used by the Court of Appeals appears to be taken from what is now Code, Art. 27, § 639. In the enactment of what is now § 641A in 1970 the legislature placed no expressed limitation on the discretion of the court to, "place the defendant on probation upon such terms and conditions as the courts may deem proper". But by Acts of Assembly, 1973, ch. 651, the explicitly limiting words of § 639 were left unchanged in a reenactment of that section.

In *Watson v. State, supra,* we said that we need not reconcile the terms of the several statutes, and held, "that the conditions of probation imposed by the trial judge exceeded the authority reposed in him under any of these statutes."

The Court of Appeals held in *Bird v. State,* 231 Md. 432, 190 A. 2d 804 (1963), that banishment from the United States was not a proper condition for suspension of sentence, and was beyond the power of the court and void. The facts in the case before us do not require that we decide whether the power to impose a condition for payment of counsel fees rises from the limited words of § 639 or from the broader words of § 641A.

A condition that the probationer pay court costs and counsel fee for the representation furnished to him as an indigent seems to have been accepted as sufficiently related to personal behavior or deportment in *Smith v. State,* 11 Md. App. 317, 273 A. 2d 626, *cert. denied,* 262 Md. 749 (1971). The point was not raised. Smith was placed on probation upon several conditions, among which was that he pay court costs of $73.75 and counsel fee of $100.00, payment (obviously as to terms) to be determined by the Probation Department. His failure to pay anything was the basis of a subsequent finding that he violated his probation. It was from that finding that he appealed. We affirmed. We said, at 323:

"We think the testimony of the Probation Officer established with such reasonable certainty as

> properly to satisfy the conscience of the court that appellant had violated a condition of probation known to him, namely the payment of court costs and counsel fees. We hold there was no abuse of discretion in the court's action."

It is significant that in *Smith* the probation was granted and the conditions were imposed on 3 October 1969. The petition charging violation of the conditions was filed on 8 June 1970.

The Office of Public Defender in Maryland was created by Acts of Assembly, 1971, ch. 209, which enacted a new Article 27A of the Annotated Code of Maryland. The creation of the office was effective on 1 July 1971, and the operative provisions of the system became effective on 1 January 1972. Art. 27A states in § 1:

> "It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, * * * ."

Definition in § 2 (g) the word "expenses" means all costs incident to investigation, other pretrial preparation, trial and appeal. Section 7 deals with eligibility for Public Defender services, and with recovery of expenses. Subsection (a) provides that eligibility shall be determined on the basis of need, and that need shall be measured according to the person's financial ability to engage and compensate competent private counsel and to provide all other necessary expenses of representation. It is further stated that the necessary financial ability is a variable, depending on the nature, extent, and liquidity of assets, and on the defendant's disposable net income.

Four separate references to reimbursement for services appear in § 7. They are:

1. When services are provided to an eligible child, his parents shall be obliged to reimburse the office *in such amounts as they can reasonably be expected to pay.* (Emphasis added).

2. When it appears that the defendant has or reasonably expects to have means to meet some part of the expenses, he shall be required to reimburse the office *in such amounts as he can reasonably be expected to pay.* (Emphasis added).

3. When representation is undertaken provisionally before eligibility can be determined, and it is subsequently determined that the person is ineligible, he shall be obliged to reimburse the office for the cost of services rendered to that time.

4. When a defendant shall have or acquire an interest in real property, a lien for the reasonable value of services rendered may be perfected against any and all of his real property except his residence.

In two of the four situations — ownership of real estate and ineligibility from the beginning — the liability to reimburse is unqualified. ɪn the other two, liability to reimburse is limited to what the person can reasonably be expected to pay. That limitation seems to require that before reimbursement may be ordered or sought, there must be a determination of ability to pay, perhaps using the same standards that govern eligibility initially. Whatever may need to be done, exclusive authority is committed by § 7 (f) to the central collection unit of the Department of Budget and Fiscal Planning, to "do all things necessary and proper to collect all moneys due to the State by way of reimbursement for services rendered" pursuant to the Public Defender Article.

It may be that in their overall effect upon the appellant

and upon society, the terms of the sentence, its partial suspension, and the conditions of probation in the present case are well designed to punish, reform, and deter. The discretion of a judge in imposing sentence and conditions of probation is very broad, but its exercise must be confined within the limits of other applicable laws and practices.

We conclude that it was the intention of the legislature, in enacting the Public Defender Article, to provide that only in the circumstances specified in that law would the State have the right to require or seek reimbursement for the expenses incurred in carrying out its guarantee of counsel in the representation of indigents in criminal and juvenile proceedings.[1] It is significant also that the legislature specified one State agency which is to do all things necessary and proper to collect money due by way of reimbursement.

---

1. Many other jurisdictions have statutory provisions or administrative procedures for reimbursement of expenses of defense of indigents. In James v. Strange, 407 U. S. 128, 32 L.Ed.2d 600, 92 S. Ct. 2027 (1972) the Supreme Court held invalid under the equal protection clause a Kansas statute because it provided that in an action to compel repayment of counsel fees the indigent was denied the benefit of exemptions available generally to civil judgment debtors.

In the case of In re Allen, 78 Cal. Rptr. 207, 455 P. 2d 143 (1969) the Supreme Court of California held that a practice, apparently not based on any statute, of imposing as a condition of probation a requirement that the indigent reimburse the county for court appointed counsel, constitutes an impediment to the free exercise of the constitutional right to counsel, and may not be permitted.

In Fuller v. Oregon, 417 U. S. 40, 40 L.Ed.2d 642, 94 S. Ct. 2116 (1974), the Supreme Court approved the Oregon recoupment statute, which had been construed as never mandatory, and which it said was "quite clearly directed only at those convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently gain the ability to pay the expenses of legal representation".

In Rinaldi v. Yeager, 384 U. S. 305, 16 L.Ed.2d 577, 86 S. Ct. 1497 (1966) the Supreme Court held unconstitutional as a denial of equal protection a New Jersey statute authorizing recoupment by withholding prison wages. It remarked, as a dictum, that a proper reimbursement scheme could be enacted, and repayment could easily be made a condition of probation or parole.

Other cases are State v. Foust, 13 N.C.App. 382, 185 S.E.2d 718 (1972), overruled as to procedure prescribed, State v. Young, 21 N.C.App. 316, 204 S.E.2d 185 (1974); State ex rel. Brundage v. Eide, 83 Wash. 2d 676, 521 P. 2d 706 (1974); State v. Gerard, 57 Wis. 2d 611, 205 N.W.2d 374, appeal dismissed, 414 U. S. 804, 38 L.Ed.2d 40, 94 S. Ct. 148 (1973).

Also of interest is Comment, "Reimbursement of Defense Costs as a Condition of Probation for Indigents", 67 Mich. L. Rev. 1404 (1969). The draft of ABA Minimum Standards relating to Providing Defense Services says, § 6.4, that reimbursement should not be required, except for fraud in the determination of eligibility.

It is our holding that the authority of the trial court to require, as a special condition of probation, that the appellant reimburse the State for counsel fees incurred in her defense, was superseded by the Public Defender law. We could strike out this condition of probation, which was beyond the authority of the court to impose, and let the rest of the sentence stand. But it is obvious that the trial judge devised a plan which he considered best for the defendant before him and for society. Eliminating one aspect of the plan could defeat the desired result. As the Court of Appeals did for similar reasons in *Bird v. State, supra,* and as this Court did in *Watson v. State, supra,* we shall vacate the sentence for assault and battery and remand the case for imposition of a proper sentence.

We notice, without answering them, several questions which arise from the sentence as imposed. Was it intended that there be any general conditions of probation, in addition to the special conditions? If so, must they be ordered at the time of sentencing? May the imposition of conditions of probation be postponed until the commencement of a deferred probation? If appellant should be released on parole before serving the first five years, who establishes the conditions? For the remainder of the first five years, is she on parole, or on probation? If a violation during that period is alleged, is revocation determined administratively by the Parole Board, or judicially by the court?

In short, as we said in *Watson v. State, supra,* "the conditions imposed must be clear, definite and capable of being properly comprehended and understood not only by the individual upon whom they are imposed but by those responsible for their enforcement".

The other two questions have no substantial merit, and may be disposed of without difficulty. Appellant and her boyfriend, Perry Stewart, were visiting in the apartment of Fred Thorpe and his girlfriend, Elizabeth Williams. All were or had been drinking alcoholic beverages. Appellant removed a revolver from her clothing, and Stewart was shot. Each of the four persons present described some of the action.

The trier of the facts could believe that the shooting was intentional, or could believe that it was accidental. The credibility of the witnesses, and the weight to be given to the testimony of each were matters for the trial judge. Since he believed what was quite obviously the more likely version of the events, we cannot say under the appellate test prescribed in Maryland Rule 1086 that his finding was clearly erroneous.

Appellant's motion for a mistrial arose from a reference by the State's Attorney to a pretrial statement by Miss Williams in which she stated that appellant had said, "I am going to kill you". The State's Attorney was seeking permission to use the statement to refresh the recollection of the witness. The judge did not allow use of the statement. He made it very clear that he would give no effect to what he had heard, and would make his decision on the admissible evidence. He said, "The Court's mind is an open book waiting for you gentlemen to write on the blank pages, after which I will come up with the ruling."

Our judicial system must and does assume that judges are capable of excluding from consideration any information not properly before them as evidence. *State v. Hutchinson*, 260 Md. 227, 271 A. 2d 641 (1970); *State v. Babb*, 258 Md. 547, 267 A. 2d 190 (1970). Whether to declare a mistrial is within the sound discretion of the trial judge. *Kelly v. State*, 16 Md. App. 533, 298 A. 2d 470, *aff'd*, 270 Md. 139, 310 A. 2d 538 (1973); *James v. State*, 14 Md. App. 689, 288 A. 2d 644 (1972). That discretion was not abused here.

> *Judgments affirmed.*
> *Sentence for assault and battery vacated and case remanded for imposition of a proper sentence.*