[No. 2863-1. Division One. March 3, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID BARKLIND, *Appellant*.

*James Walsh*, for appellant (appointed counsel for appeal).

*David F. Thiele, Prosecuting Attorney*, for respondent.

WILLIAMS, C.J.—The defendant, David Barklind, pleaded guilty to the crime of second-degree burglary. Judgment of conviction was entered, imposition of sentence was de-

ferred for 1 year, and he was granted probation. The sole question presented on appeal is whether Barklind, an indigent, was denied his constitutional right to legal counsel without cost, because one of the conditions of his probation required him to pay Island County $150 as reimbursement for a portion of the expense of his court-appointed attorney.

The agreed facts are these: Following his arrest on suspicion of burglary, Barklind submitted an affidavit concerning his finances to the court, was found to be indigent, and an attorney was appointed to represent him. Subsequently, on advice of counsel, he decided to plead guilty. When he was called before the court to enter his plea and for sentencing, the State proposed that he be granted a deferred sentence and placed on probation. One of the terms of probation suggested by the State was that he be required to reimburse Island County $150 "as payment toward the fee of defendant's court-appointed attorney." Barklind objected to this repayment provision, contending that it was unconstitutional because it imposed a burden on his right to counsel, subjected him to imprisonment for debt and violated the equal protection clause. After hearing argument of counsel, the court accepted the plea of guilty, deferred imposition of sentence, and granted probation on several conditions, one of which was the $150 payment suggested by the State. At that time, Barklind was indigent, and he was allowed to perfect his appeal in forma pauperis.

Barklind relies upon *State ex rel. Brundage v. Eide*, 83 Wn.2d 676, 521 P.2d 706 (1974), in support of his position that the recoupment provision burdened his right to counsel; the State refers to *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974), as authority for the legality of that provision. The circumstances in *State ex rel. Brundage v. Eide, supra*, are that the defendant was arrested by police in the city of Auburn for committing two misdemeanors. When arraigned, he established his indigency, and the court appointed an attorney to represent him. The order of appointment stated that the city would

be required to pay defense counsel $35 per hour and " '[t]hat if the defendant finds employment of sufficient income during the next six months he shall repay the City of Auburn the fees paid in this case.' " The Supreme Court held that the order unnecessarily deterred the defendant in the exercise of his Sixth Amendment right to counsel.

*Fuller v. Oregon, supra,* presents a different factual situation. In that case, there was a state statute in effect which permitted the court to require a convicted defendant to pay costs specially incurred by the state in prosecuting the defendant. The costs were not to include "expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law." *Fuller v. Oregon, supra* at 43 n.5. Further, the statute limited the exaction of costs to those defendants who were able to pay, and, at the time of ordering costs, the court was to consider the financial resources of the defendant and the "nature of the burden that payment of costs will impose." The court was given the power to adjudge the defendant in contempt for failure to pay only if there was an "intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment." Also, the defendant was authorized at any time to petition the court for remission of payment of all or part of the costs assessed. The United States Supreme Court declared that the Oregon statute was constitutional, and affirmed the Oregon Court of Appeals.

■ In deciding that the defendant was not deprived of legal assistance, the court said:

> As the State Court of Appeals observed in this case, an indigent is entitled to free counsel "when he needs it"— that is, during every stage of the criminal proceedings against him. 12 Ore. App., at 158-159, 504 P. 2d, at 1396. The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel. The Oregon statute is carefully designed to insure that only those who

actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.

(Footnote omitted.)

*Fuller v. Oregon, supra* at 52-53. Although there is no recoupment statute in Washington, the following terms of the order of probation, which, ostensibly, Barklind accepted to avoid going to jail, are similar to those of the Oregon statute:

> Defendant's duty to make the payments pursuant to item 1 above shall exist only so long as defendant has the present financial ability to pay without causing undue hardship to himself or his dependents. Revocation of this probation for nonpayment shall only occur if defendant wilfully failed [*sic*] to make the payments having the financial ability to do so or wilfully failed [*sic*] to make a good faith reasonable effort to acquire means to make the payment. Defendant may petition the court to adjust the amount of any installment payments or the total amount due to fit his changing financial situtation [*sic*].

Even without a statute, the trial court met all of the requirements of the constitution and adhered to the principles of fairness delineated in *Fuller v. Oregon, supra*. At the time the court considered repayment, Barklind was a convicted defendant, he was not required to pay unless he was able, a failure to pay would not result in a contempt finding unless he willfully disobeyed the order, and he was afforded the continuing opportunity to apply for remission.

Barklind argues that the repayment condition of his probation "chilled" his right to counsel, and the right of others, who, in the future, become similarly situated. This argument is answered in *Fuller v. Oregon, supra* at 56:

> The narrow construction of the Oregon recoupment statute in this case disposes of petitioner's claim that the statute "chills" the exercise of the right to counsel. Repayment cannot be required until a defendant is able to pay the costs, and probation cannot be revoked for nonpayment unless there is a specific finding that payment would not work hardship on a defendant or his family.

Under these circumstances, the "chill" on the exercise of the right to counsel is no greater than that imposed on a nonindigent defendant without great sums of money. Even though such a defendant can afford counsel, he might well be more ready to accept free appointed counsel than to retain counsel himself. Yet a State is not therefore required by the Federal Constitution to provide appointed counsel for nonindigent defendants.

(Footnote omitted.)

■ Barklind next contends that the condition for payment renders him liable for imprisonment for debt, which is proscribed by Const. art. 1, § 17. Basically, the debt referred to in this section of the constitution is confined to obligations arising from contract, express or implied. *In re Milecke*, 52 Wash. 312, 100 P. 743 (1909). The principle involved is stated in that case as follows:

> That no man shall oppress his debtor or restrain him of his liberty has come to be a fixed principle, cherished by the people, and so guarded by constitutional provisions that the legislature cannot give ear to those who seek to use the power of the state to coerce the payment of their debts.

*In re Milecke, supra* at 315. The constitutional inhibition was extended to a judgment founded upon tort in *Bronson v. Syverson*, 88 Wash. 264, 152 P. 1039 (1915). However, the provision does not apply to imprisonment for failure to pay an innkeeper for lodging, there being a statute making such practice a fraud, *State v. Higgins*, 67 Wn.2d 147, 406 P.2d 784 (1965); or to a contractor who receives the full price for a contract, but does not pay laborers and materialmen, *State v. Williams*, 133 Wash. 121, 233 P. 285 (1925); or to costs assessed against a complaining witness for a malicious prosecution, *Colby v. Backus*, 19 Wash. 347, 53 P. 367 (1898); or, normally, to court orders and domestic relations cases involving alimony, support payments, property settlements and court costs in connection therewith, *Decker v. Decker*, 52 Wn.2d 456, 326 P.2d 332 (1958). Barklind did not contract for, or agree to pay his attorney's fees; he accepted the legal services as a matter of constitutional

right. The order of probation, which was entered after Barklind's conviction, created a debt only in the sense that it required Barklind to repay society for a part of what it lost as a result of his commission of a crime. He is not a simple unfortunate debtor who is unable to perform his pecuniary obligations; rather, he is a convicted felon whom the court is attempting to rehabilitate through the exercise of its probationary powers.

 Probation is an act of judicial grace or lenience authorized by statute (RCW 9.95.210), and "motivated by many judicial hopes, among which are that the offender will mend his ways, make restitution and avoid not only repetition of his offense but the appearance thereof." *State ex rel. Woodhouse v. Dore,* 69 Wn.2d 64, 70, 416 P.2d 670 (1966). It is reasonable to believe that Barklind will have a better chance of rehabilitation if he is required to pay a part of the expense which his mistake has cost the public. And reasonableness is the test of the propriety of a condition of probation. *State v. Langford,* 12 Wn. App. 228, 529 P.2d 839 (1974).

Barklind's contention that the repayment provision violates the equal protection clause is based upon *James v. Strange,* 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972). He claims that indigent defendants are not afforded the relief of the ordinary exemption statutes which are available to judgment debtors. In the *James* case, the recoupment statute of the state of Kansas provided that an indigent defendant became obligated to the state when counsel was supplied, and the state could reduce its claim for the amount paid to a civil judgment. The statute further provided for execution upon the judgment as authorized by the Kansas Code of Civil Procedures. The basic debtor exemptions were not allowed, however, so the statute permitted the state to destroy the economic prospects of an indigent defendant. Of course, that is not Barklind's situation. He is not a judgment debtor in the ordinary sense, and he has been ordered to pay the fees as a part of his probation only when he has "the present financial abil-

824

ity to pay without causing undue hardship to himself or his dependents."

We affirm.

JAMES and SWANSON, JJ., concur.

Petition for rehearing denied June 11, 1975.

Review by Supreme Court pending November 3, 1975.