No. 48,876

STATE OF KANSAS, *Appellee,* v. JAMES L. KEENER, *Appellant.*

(577 P.2d 1182)

Opinion filed May 6, 1978.

*L. H. Goossen,* of Newton, argued the cause and was on the brief for the appellant.

*James W. Modrall,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from convictions for one count of aggravated burglary (K.S.A. 21-3716), one count of burglary (K.S.A. 21-3715), one count of aggravated robbery (K.S.A. 21-3427), one count of aggravated assault (K.S.A. 21-3410), and three counts of attempted murder (K.S.A. 21-3301 and K.S.A. 21-3401). The issue before this court involves Article IV of the Agreement on Detainers (K.S.A. 22-4401, *et seq.*).

On September 20, 1974, a complaint was filed in Harvey County, Kansas, alleging defendant committed the above crimes. Federal charges arising from the same incident were filed at about the same time and on April 7, 1975, defendant pled guilty to those charges. He was subsequently sentenced to the federal penitentiary for one term of twenty-five years and two fifty-year terms. Defendant was placed in the U. S. Penitentiary at McNeil Island, Washington.

On May 9, 1975, Sedgwick County filed a request for temporary

custody of defendant, pursuant to Article IV of the Agreement on Detainers so it might prosecute him on outstanding charges on another crime. Harvey County filed an identical request on August 6, 1975. Two days later the federal warden offered custody of defendant to the State of Kansas as the Agreement provides. The offer was addressed to Sedgwick County, but listed the charges pending in Harvey County. On August 11, 1975, Harvey County accepted the offer of custody. Defendant arrived in Kansas on September 20, 1975. On September 22, 1975, defendant was arraigned in Harvey County and counsel was appointed. Thereafter defendant was returned to Sedgwick County where he had been jailed upon arriving in Kansas. On November 10, 1975, defendant pled guilty to the Sedgwick County charges. On December 3, 1975, Sedgwick County ordered defendant returned to McNeil Island despite the pending Harvey County charges which were known to Sedgwick County. Defendant was returned on December 9. One week later Harvey County learned of this situation and immediately attempted to regain custody of defendant. On January 16, 1976, defendant filed a motion to dismiss the Harvey County charges, relying on Article IV (*e*) of the Agreement on Detainers. Defendant was returned to Kansas on January 20, 1976, and was later tried and convicted of the charges.

On appeal, defendant argues, *inter alia,* that the charges should have been dismissed because of the state's violation of Article IV of the Agreement on Detainers. We agree. Article IV (*e*) of the Agreement states:

"(*e*) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V (*e*) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

The provisions of the act were triggered when the request for temporary custody was filed and the federal authorities gave up custody of defendant. (See, *State v. Clark,* 222 Kan. 65, 68, 563 P.2d 1028 [1977].) Both the state and federal governments are parties to the Agreement (Article II [*a*]) and they are bound by its terms. When the state returned defendant without having tried him on all the outstanding charges pending in this state defendant was entitled to have them dismissed with prejudice.

While the sanction imposed may seem severe, it is mandated by the Agreement. Other jurisdictions faced with similar facts have reached the same conclusion. (See, *United States v. Sorrell,* 562 F.2d 227 [3d Cir. 1977]; *United States v. Thompson,* 562 F.2d 232 [3d Cir. 1977]; *United States v. Cyphers,* 556 F.2d 630 [2d Cir. 1977], cert. denied 431 U.S. 972, 53 L.Ed.2d 1070, 97 S.Ct. 2937; *United States v. Mauro,* 544 F.2d 588 [2d Cir. 1976]; *United States ex rel. Esola v. Groomes,* 520 F.2d 830 [3d Cir. 1975]; *Commonwealth v. Merlo,* 242 Pa. Super. 517, 364 A.2d 391 [1976].) The charges must be dismissed.

Defendant also raises two issues concerning the award of attorney's fees pursuant to the aid to indigent defendants fund. (See, K.S.A. 22-4501, *et seq.*) The first issue concerns the adequacy of the award of attorney's fees made by the state board of supervisors of panels to aid indigent defendants. After the conclusion of the criminal case, defense counsel submitted a claim voucher for the time and expense involved in the defense of the case. The board reduced the claim and made an award. A subsequent attempt by defense counsel to obtain an additional award was denied.

The thrust of defendant's argument is that he has a constitutional right to have his defense counsel adequately compensated, particularly in a case where the prosecution was "unlawful." We find no support for the argument.

It is the moral and ethical obligation of the bar to make representation available to the public. (See, Canon 2, Code of Professional Responsibility, 220 Kan. cx.) Quite often, fulfillment of that obligation involves the representation of a client, particularly a criminal defendant, for little or no remuneration. Enactment of K.S.A. 22-4501, *et seq.,* has served to relieve some of the hardships involved in fulfilling an attorney's obligation to provide legal representation to the public; but it has not cancelled the attorney's ethical responsibility to provide representation without compensation if necessary. Court appointed counsel has no constitutional right to be compensated, much less to receive full and adequate compensation which may have been received if the same time had been spent on a fee-paying client's problems. (See, *United States, v. Dillon,* 346 F.2d 633 [9th Cir. 1965].)

Claims for fees submitted to the board of supervisors of panels to aid indigent defendants are considered by the board according

to the criteria set forth in the statutes and rules of this court. The decision of the board as to the amount of compensation to be awarded in any case is final. (Rule 404, Claims Under Indigent Criminal Defendants Act, 220 Kan. cviii.)

Finally, defendant challenges the constitutionality of the aid to indigent defendants recoupment statute, K.S.A. 1977 Supp. 22-4513. Under the terms of the statute a defendant is liable to the State of Kansas for any expenditure paid from the aid to indigent defendants fund. The statute provides that the expenditures shall be recovered from the defendant by sending to him by certified mail a notice of liability, stating the amount of the expenditure and a demand for repayment. The notice further states that the sum must be repaid within sixty days after receipt of the notice or the expenditure shall become a judgment bearing six per cent annual interest after it is docketed on the judgment docket in the county where the criminal case was tried. This judgment becomes a lien on real estate the same as any other civil judgment and is subject to satisfaction by execution or garnishment to the same extent as an ordinary civil judgment.

Defendant argues the statute is unconstitutional because it does not provide for notice and a hearing, violating the due process clause. In support of his argument he cites *Hillhouse v. City of Kansas City,* 221 Kan. 369, 559 P.2d 1148 (1977); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 42 L.Ed.2d 751, 95 S.Ct. 719 (1975); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 40 L.Ed.2d 406, 94 S.Ct. 1895 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983 (1972), reh. denied 409 U.S. 902, 34 L.Ed.2d 165, 93 S.Ct. 177; and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 23 L.Ed.2d 349, 89 S.Ct. 1820 (1969).

We find no constitutional infirmity in the recoupment statute. A defendant receives notice of the existence of the debt for legal services by certified mail at his last known address prior to the time the sum is made a judgment of record. He is given sixty days to pay the debt. Implicit in that sixty-day delay is the right to object to the judicial administrator concerning the amount of the expenditure. Even after the sum becomes a judgment the right to a hearing is present when the state attempts to collect the judgment by execution or garnishment. In either situation, the debtor has the right to be heard and, if he wishes, to contest the validity of the judgment. The right to contest a judgment at a collection

proceeding satisfies due process requirements. (See, *United States v. Durka,* 490 F.2d 478 [7th Cir. 1973]; *Stroinski v. Office of Public Defender,* 134 N.J. Super. 21, 338 A.2d 202 [1975]. See also, *People v. Amor,* 12 Cal. 3d 20, 114 Cal. Rptr. 765, 523 P.2d 1173 [1974].)

The judgment as to the conviction on the criminal charges is reversed and the trial court is instructed to discharge the defendant. The judgment as to attorney fees is affirmed.

McFARLAND, J., dissents from Syl. 2 and corresponding parts of the opinion.