**Iley SIMMONS et al., Plaintiffs,**

v.

**James R. JAMES, Judicial Administrator and the State of Kansas, Defendants.**

No. 77–2162.

United States District Court,
D. Kansas.

March 30, 1979.

Richard C. Wallace, Wyandotte County Legal Aid Society, Kansas City, Kan., for plaintiffs.

Robert T. Stephan, Atty. Gen., by Janet Chubb, Asst. Atty. Gen., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This class action which challenges the validity of the Kansas "recoupment" statute, K.S.A. 1978 Supp. 22–4513, seeks declaratory injunctive and monetary relief. The action is brought under the federal civil rights statutes, and jurisdiction is conferred by 28 U.S.C. § 1343.

By order of August 10, 1978, Judge O'Connor certified the claims for declaratory and injunctive relief for class action treatment. The claims for compensatory and punitive damages were severed, and proceed as an individual action. According to plaintiff's complaint, the class "consists of all persons who have received free legal counsel pursuant to K.S.A. 21–4610, 22–4510, 22–4513, and are now being billed by the State of Kansas for that free legal counsel."

The challenged statute, K.S.A. 1978 Supp. 22–4513, requires the defendant James, Kansas' Judicial Administrator, to demand repayment from an indigent defendant for whom an attorney was provided as soon as the service has been paid for by the state. If no payment is made, a judgment is summarily entered by the Clerk of the respective District Court as any other civil judgment. The statute reads as follows:

22–4513. Same; liability of defendant to state for expenditures; notice and demand of expenditure, contents; certificate of abstract to clerk of district court; judgment, when; filing in other counties; executions, garnishment; dormant judgment, when; revivor; other expenditures from fund, in recovery actions for recovery by attorney general, limitation. (a) Whenever any expenditure has been made from the aid to indigent defendants fund to provide counsel and other defense services to any defendant, as authorized by K.S.A. 1976 Supp. 22–4510, such defendant shall be liable to the state of Kansas for a sum equal to such expenditure, and such sum may be recovered from the defendant by the state of Kansas for the benefit of the fund to aid indigent defendants. Within thirty (30) days after such expenditure, the judicial administrator shall send a notice by certified mail to the person on whose behalf such expenditure was made, which notice shall state the amount of the expenditure and shall demand that the defendant pay said sum to the state of Kansas for the benefit of the fund to aid indigent defendants within sixty (60) days after receipt of such notice. The notice shall state that such sum became due on the date of the expenditure and that the sum demanded will bear interest at six percent (6%) per annum from the due date until paid. Failure to receive any such notice shall not relieve the person to whom it is addressed from the payment of the sum claimed and any interest due thereon.

Should the sum demanded remain unpaid at the expiration of sixty (60) days after mailing the notice, the judicial administrator shall certify an abstract of the total amount of the unpaid demand and interest thereon to the clerk of the district court of the county in which counsel was appointed or the expenditure

authorized by the court, and such clerk shall enter the total amount thereof on his or her judgment docket and said total amount, together with the interest thereon at the rate of six percent (6%) per annum, from the date of the expenditure thereof until paid, shall become a judgment in the same manner and to the same extent as any other judgment under the code of civil procedure and shall become a lien on real estate from and after the time of filing thereof. A transcript of said judgment may be filed in another county and become a lien upon real estate, located in such county, in the same manner as is provided in case of other judgments. Execution, garnishment, or other proceedings in aid of execution may issue within the county, or to any other county, on said judgment in like manner as on judgments under the code of civil procedure. The exemptions provided for in the code of civil procedure shall apply to any such judgment. If execution shall not be sued out within five (5) years from the date of the entry of any such judgment, or if five (5) years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant and shall cease to operate as a lien on real estate of the judgment debtor. Such dormant judgment may be revived in like manner as dormant judgments under the code of civil procedure.

(b) Whenever any expenditure has been made from the aid to indigent defendants fund to provide counsel and other defense services to any defendant, as authorized by K.S.A. 1976 Supp. 22–4510, a sum equal to such expenditure may be recovered by the state of Kansas for the benefit of the aid to indigent defendants fund from any persons to whom the indigent defendant shall have transferred any of his or her property without adequate monetary consideration after the commission of the alleged crime, to the extent of the value of such transfer, and such persons are hereby made liable to reimburse the state of Kansas for such expenditures with interest at six percent (6%) per annum. Any action to recover judgment for such expenditures shall be prosecuted by the attorney general, who may require the assistance of the county attorney of the county in which the action is to be filed, and such action shall be governed by the provisions of the code of civil procedure relating to actions for the recovery of money. No action shall be brought against any person under the provisions of this section to recover for sums expended on behalf of an indigent defendant, unless such action shall have been filed within two (2) years after the date of the expenditure from the fund to aid indigent defendants.

Another relevant statute is K.S.A. 1978 Supp. 21–4610(k) which authorizes a trial judge to impose recoupment as a condition of probation.

Plaintiffs' complaint challenges on multiple grounds the constitutionality of the recoupment statute under both the Kansas and United States Constitutions.

Plaintiffs' first cause of action alleges that the Kansas procedure for entering judgment under the recoupment statute violates due process under the 5th Amendment to the United States Constitution and the 18th Section in the Bill of Rights to the Kansas Constitution in that it provides inadequate notice and opportunity to be heard before judgment is entered.

Plaintiffs' second cause of action alleges that the challenged statute, because it does not afford a hearing before rendition of judgment, denies plaintiffs a jury trial as guaranteed by the 5th and 7th Amendments to the United States Constitution and the 5th and 18th Sections of the Bill of Rights of the Kansas Constitution.

Plaintiffs' third cause of action alleges denial of equal protection in violation of the 14th Amendment to the United States Constitution and the 1st Section of the Bill of Rights of the Kansas Constitution. The equal protection claim alleges that an indigent defendant who has a judgment entered against him pursuant to 22–4513 is

not afforded the same protections as are afforded other individuals who have civil judgments rendered against them. Specifically, it is claimed that indigent criminal defendants are not afforded proper notice, hearing, jury trial rights, or rights of appeal which are accorded to civil defendants. Also, it is argued that K.S.A. 21–4610(k) provides that recoupment may be made a condition of probation, whereas a non-indigent defendant who has hired his own counsel and not paid him would never have payment of his counsel made a condition of probation. Finally, it is argued that the failure to determine who is financially capable of reimbursing the state and who is not is a denial of the right to equal protection.

Plaintiffs' fourth cause of action alleges a denial of the right to a jury trial, in violation of the Sixth Amendment to the United States Constitution. The theory of this argument is that an indigent defendant is deterred from exercising his right to a jury trial because that would increase the time his attorney would spend on the case and thus increase the amount which the indigent would ultimately have to reimburse the state. Thus, plaintiffs allege a "chilling" effect upon the right to a jury trial.

Plaintiffs' fifth cause of action alleges that the practical effect of 21–4610(k) allows imprisonment for failure to pay a debt in violation of the 16th Section of the Bill of Rights of the Kansas Constitution and the United States Constitution. Plaintiffs allege that continuing indigency could prevent a defendant from receiving probation conditioned upon reimbursement under subsection (k) of 21–4610.

Plaintiffs' sixth cause of action alleges that K.S.A. 1978 Supp. 21–4610(k) allows the State of Kansas to use conditions of probation as a "collection device" to force payment of a debt allegedly in violation of the right to be free from cruel and unusual punishment, which is guaranteed by the 8th Amendment to the United States Constitution and the 9th Section of the Bill of Rights of the Kansas Constitution.

Plaintiffs' seventh cause of action argues that 22–4513 is unconstitutional because it places a needless burden upon the indigent defendant's 6th Amendment right to counsel. Plaintiffs rely upon this Court's opinion in *Strange v. James,* 323 F.Supp. 1230 (1971), *aff'd on other grounds,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972).

Plaintiffs' eighth cause of action attempts to state a basis for punitive damages in that it is alleged that defendants, by their acts and omissions, intentionally deprived the plaintiff class members of their constitutional rights.

This case comes before the Court upon defendants' motion for summary judgment (Doc. # 19) and plaintiffs' motion for partial summary judgment (Doc. # 15). The basic issue presented by the motions is the constitutionality of the Kansas recoupment practices.

The Supreme Court of the United States has rendered several decisions in an attempt to guarantee that "the kind of trial a man gets . . . [will not depend] . . . on the amount of money he has." *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956). *See also, Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). As a result of these decisions, the states have expended and are expending considerable sums to provide indigent defendants with counsel and other defense services. In an attempt to recoup some of these expenditures, many states have enacted "recoupment" statutes similar to Kansas' K.S.A. 1978 Supp. 22–4513.

The Supreme Court approved recoupment in principle in *Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966), by stating:

We may assume that a legislature could validly provide for replenishing a county treasury from the pockets of those who have directly benefited from county expenditures.

Despite approving recoupment in principle, the *Rinaldi* decision declared unconstitutional on equal protection grounds a New Jersey statute which provided for reim-

bursement from the institutional earnings of an unsuccessful criminal appellant for a free transcript which had been provided by the county. Because the statute provided no means of recovering funds from unsuccessful appellants who were not imprisoned, it was held to be invidiously discriminatory.

The Kansas statute, as it existed in 1971, was the first recoupment statute of its kind to reach the United States Supreme Court. The statute, K.S.A. 1970 Supp. 22–4513, was declared unconstitutional by a three-judge court in *Strange v. James*, 323 F.Supp. 1230 (D.Kan.1971). Relying upon the decision of *In Re Allen*, 71 Cal.2d 388, 78 Cal.Rptr. 207, 455 P.2d 143 (1969), the court held that the Kansas statute unduly chilled the exercise of the right to counsel. The Court noted, at p. 1232:

> Beyond question, the Kansas statute deters indigents from exercising their right to the assistance of counsel. The statute most assuredly puts the accused in the position of deciding whether he can afford to consult even with court appointed counsel. In practical effect, this statutory condition on an indigent' accused's acceptance of court appointed counsel returns the indigent accused to the lawyerless position he occupied prior to the decision in *Gideon v. Wainwright*, supra. For if an accused has not the means to hire an attorney in the first instance, he will not be in a position to accept court appointed counsel when it merely means that he has at most ninety days grace in paying the cost of legal services rendered on his behalf.

At p. 1233, the court went on to observe:

> Since we believe that the statute in its present form is a needless burden or condition on the exercise of a constitutional right, our attention now turns to whether the statute can be construed in any way to eliminate its chilling effect. In answer to this question, it appears that as long as the statute in any way requires the indigent to repay the state for legal services, the statute will remain as an unconstitutional burden to the exercise of constitutional rights, as those rights were laid out in *Gideon v. Wainwright*, supra.

Thus, the three-judge district court declared unconstitutional K.S.A. 1970 Supp. 22–4513 on grounds that it was "a burden and condition on the exercise of the right to counsel and thereby has some chilling effect on the exercise of the right." [323 F.Supp. at 1234].

The Supreme Court's decision concerning the Kansas statute is found in *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972). Preliminarily, the Supreme Court noted that the Kansas statute was just one of many similar state laws, and that their validity would have to be determined on a case-by-case basis. [407 U.S. at 132, 133, 92 S.Ct. 20, 27] The Court noted as an aside that it was not to determine the wisdom of the provision which had recovered only $17,000 in two years of operation, a negligible amount compared to the total expended. [p. 133, 92 S.Ct. 2027] The Supreme Court did not reach the question of whether the statute chilled the right to counsel. Rather, the Supreme Court's decision invalidated the statute on equal protection grounds. At 407 U.S. 135, 92 S.Ct. 2031, the Court held:

> Yet the ostensibly equal treatment of indigent defendants with other civil judgment debtors recedes sharply as one examines the statute more closely. The statute stipulates that save for the homestead, "[n]one of the exemptions provided for in the code of civil procedure shall apply to any such judgment . . . ." This provision strips from indigent defendants the array of protective exemptions Kansas has erected for other civil judgment debtors, including restrictions on the amount of disposable earnings subject to garnishment, protection of the debtor from wage garnishment at times of severe personal or family sickness, and exemption from attachment and execution on a debtor's personal clothing, books, and tools of trade. For the head of a family, the exemptions afforded other judgment debtors become more extensive, and cover furnishings, food, fuel, clothing, means of transportation, pen-

sion funds, and even a family burial plot or crypt.

The Supreme Court concluded its opinion in *James v. Strange* by stating:

We thus recognize that state recoupment statutes may betoken legitimate state interests. But these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors to whom the statute itself repeatedly makes reference. State recoupment laws, notwithstanding the state interests they may serve, need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect. The statute before us embodies elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law. [407 U.S. at 141–142, 92 S.Ct. at 2035]

In response to the Supreme Court's decision in *James v. Strange,* the Kansas Legislature amended 22–4513 to omit the provision stripping indigent defendants of the exemptions provided in the civil code for other judgment debtors. The statute now states: "[T]he exemptions provided for in the code of civil procedure shall apply to any such judgment." Otherwise, the statute remains the same as the day it was overturned as chilling the right to counsel by the three-judge district court at 323 F.Supp. 1230.

In its most recent pronouncement in the area, the United States Supreme Court validated an Oregon recoupment statute which did not contain the infirmities of the Kansas statute. In *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), the Court explained in considerable detail the operation of the Oregon statute which was under consideration:

As the Oregon appellate court noted in its opinion in this case, however, the requirement of repayment "is never mandatory." 12 Or.App. [152], at 156, 504 P.2d [1393], at 1395. Rather, several conditions must be satisfied before a person may be required to repay the costs of his legal defense. First, a requirement of repayment may be imposed only upon a *convicted* defendant; those who are acquitted, whose trials end in mistrial or dismissal, and those whose convictions are overturned upon appeal face no possibility of being required to pay. Or.Rev.Stat. § 161.665(1). Second, a court may not order a convicted person to pay these expenses unless he "is or will be able to pay them." § 161.665(3). The sentencing court must "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." *Ibid.* As the Oregon court put the matter in this case, no requirement to repay may be imposed if it appears at the time of sentencing that "there is no likelihood that a defendant's indigency will end . . . ." 12 Or. App., at 159, 504 P.2d, at 1397. Third, a convicted person under an obligation to repay "may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof." Or.Rev.Stat. § 161.665(4). The court is empowered to remit if payment "will impose manifest hardship on the defendant or his immediate family . . . ." *Ibid.* Finally, no convicted person may be held in contempt for failure to repay if he shows that "his default was not attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment . . ." § 161.685(2).

Thus, the recoupment statute is quite clearly directed only at those convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently gain the ability to pay the expenses of legal representation. Defendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so, and those upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no "manifest hardship" will result. The contrast with appointment-of-counsel procedures in States without recoupment requirements is thus relatively small: a lawyer is provided at the expense of the

State to all defendants who are unable, even momentarily, to hire one, and the obligation to repay the State accrues only to those who later acquire the means to do so without hardship.

The Court carefully noted that the Oregon statute did not treat indigent defendants differently from other civil judgment debtors by denying them usual statutory exemptions:

> The Oregon statute under consideration here suffers from no such infirmity. As the Oregon Court of Appeals observed, "[n]o denial of the exemptions from execution afforded to other judgment debtors is included in the Oregon statutes." 12 Or.App., at 159, 504 P.2d, at 1397. Indeed, a separate provision directs that "[a] judgment that the defendant pay money, either as a fine or as costs and disbursements of the action, or both, shall be docketed as a judgment in a civil action and with like effect . . . ." Or.Rev.Stat. § 137.180. The convicted person from whom recoupment is sought thus retains all the exemptions accorded other judgment debtors, in addition to the opportunity to show at any time that recovery of the costs of his legal defense will impose "manifest hardship," § 161.-665(4). [417 U.S. at 47, 94 S.Ct. at 2122]

The Supreme Court went on to reject a "chilling" of right to counsel argument by noting:

> The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel. The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.

> . . . . .

> This case is fundamentally different from our decisions relied on by the petitioner which have invalidated state and federal laws that placed a penalty on the exercise of a constitutional right. See *Uniformed Sanitation Men v. Sanitation Comm'r*, 392 U.S. 280, [88 S.Ct. 1917, 20 L.Ed.2d 1089]; *Gardner v. Broderick*, 392 U.S. 273, [88 S.Ct. 1913, 20 L.Ed.2d 1082]; *United States v. Jackson*, 390 U.S. 570, [88 S.Ct. 1209, 20 L.Ed.2d 138]. Unlike the statutes found invalid in those cases, where the provisions "had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them" *Id.*, at 581, [88 S.Ct. at 1216], Oregon's recoupment statute merely provides that a convicted person who later becomes able to pay for his counsel may be required to do so. Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship. [417 U.S. at 53–54, 94 S.Ct. at 2124–2125]

The next significant decision dealing with the Kansas recoupment statute was Judge O'Connor's opinion in *Arney v. James,* No. 77–3011 (D.Kan., 2/6/78, unpublished) (supplemented by order of 7/11/78). That decision is presently on appeal to the Tenth Circuit Court of Appeals. In that decision, Judge O'Connor ruled: (1) that the recoupment statute does not impermissibly "chill" the right to counsel, citing *Fuller v. Oregon;* (2) that the recoupment statute is no longer invalid under *James v. Strange;* (3) that the recoupment statute does not chill the right to appeal; (4) that the recoupment statute is not unconstitutional because plaintiff in that case allegedly did not receive advance notice of his potential liability, *see Fuller v. Oregon* at 417 U.S. 50 n. 11, 94 S.Ct. 2116, and (5) that the recoupment statute did not inflict cruel and unusual punishment upon an indigent defendant.

The latest significant case dealing with 22–4513 is *State v. Keener,* 224 Kan. 100, 577 P.2d 1182 (1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978). In that opinion, the Kansas Supreme Court upheld the recoupment statute against a due process attack:

We find no constitutional infirmity in the recoupment statute. A defendant receives notice of the existence of the debt for legal services by certified mail at his last known address prior to the time the sum is made a judgment of record. He is given sixty days to pay the debt. Implicit in that sixty-day delay is the right to object to the judicial administrator concerning the amount of the expenditure. Even after the sum becomes a judgment the right to a hearing is present when the state attempts to collect the judgment by execution or garnishment. In either situation, the debtor has the right to be heard and, if he wishes, to contest the validity of the judgment. The right to contest a judgment at a collection proceeding satisfies due process requirements. (See, *United States v. Durka,* 490 F.2d 478 [7th Cir. 1973]; *Stroinski v. Office of Public Defender,* 134 N.J.Super. 21, 338 A.2d 202 [1975]. See also, *People v. Amor,* 12 Cal.3d 20, 114 Cal.Rptr. 765, 523 P.2d 1173 [1974].) [577 P.2d at 1185]

■ After long deliberation, the Court has concluded that the Kansas recoupment procedure must be invalidated as unconstitutional. While the concept of recoupment is certainly legitimate, as was held by the Supreme Court in *Fuller,* it may be gathered from the *Fuller* opinion that recoupment is valid only under limited circumstances.

As may be seen from the provisions of *Fuller* which we have already quoted, the Court, in rejecting equal protection and right to counsel claims, repeatedly stressed that the Oregon law in question imposed a repayment obligation only upon convicted defendants who were *able to pay.* One court, in summarizing the requirements for a valid recoupment provision under *Fuller* stated seven requirements:

First, the requirement of repayment must not be mandatory . . . Second, repayment is only to be imposed upon convicted defendants . . . Third, the court may not order a convicted defendant to pay unless he "is or *will* be able to pay." . . . Fourth, the court must take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose . . . Fifth, no requirement to repay may be imposed if it appears that there is no likelihood that defendant's indigency will end . . . Sixth, a convicted person under obligation to repay may petition the court for remission of the payment of costs or of any unpaid portion thereof . . . Finally, no convicted person can be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court or to a failure to make a good faith effort to make the payment. [*State v. Barklind,* 87 Wash.2d 814, 557 P.2d 314, 317 (1976)].

Every significant case located by this Court which has discussed *Fuller* notes that the *Fuller* opinion emphasized that the Oregon recoupment law considered a defendant's *ability to pay.* *United States v. Bracewell,* 569 F.2d 1194, 1198 (2d Cir. 1978); *United States v. Santarpio,* 560 F.2d 448, 455 (1st Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977); *Stacey v. State,* 30 Or.App. 1075, 569 P.2d 640, 644 (1977); *Commonwealth v. Opara,* 240 Pa. Super. 511, 362 A.2d 305, 313 (1976); *People v. Terminelli,* 68 Mich.App. 635, 243 N.W.2d 703 (1976); *State v. Hess,* 86 Wash.2d 51, 541 P.2d 1222, 1224 (1975); *State v. Miller,* 111 Ariz. 558, 535 P.2d 15, 16 (1975); *Annot.,* 79 A.L.R.3d § 7 at 1025 (1977).

The Kansas statute, which applies to acquitted as well as convicted defendants, *requires* that a judgment be entered against a defendant with complete disregard to ability to pay and further allows such repayment to be a condition of probation. We believe that a very strong argument can be made that the Kansas law's failure to take into account ability to pay needlessly chills the right to counsel. In *Strange v. James, supra,* 323 F.Supp. at 1232–1233, the court said:

In *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Supreme Court considered the validity of a statute whose inevitable effect was to

discourage assertion of the Fifth Amendment right not to plead guilty and to deter the exercise of the Sixth Amendment right to demand a jury trial. The court said, supra at 581–582, 88 S.Ct. at 1216: "If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional." And if the legislative objective is other than to deter the exercise of rights, the objective "[C]annot be pursued by means that needlessly chill the exercise of basic constitutional rights. * * * The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive."

We must conclude that Section 22–4513 is unnecessary and therefore excessive. What can be more unnecessary than trying to recoup costs of counsel from an individual already adjudged to be an indigent and by definition unable to stand the very expense in question? In this light it is apparent that the statute needlessly encourages indigents to do without counsel and consequently infringes on the right to counsel as explicated in *Gideon v. Wainwright,* supra.

While the logic of this opinion does not apply to indigents who subsequently become able to pay, as is held in *Fuller v. Oregon,* it still applies to indigents who do not achieve the capacity to repay. Therefore, the Kansas law is still overbroad and needlessly chills the right to counsel. This is explained in *Note,* 20 K.L.R. 344, 350 (1972): [1]

> By demanding that a judgment be rendered against each defendant who had received financial assistance from the State and who had not repaid the debt, the [Kansas] legislature needlessly included those defendants who would remain indigent during the five year tenure of the judgment's enforceability.

Although the needlessness of Kan.Stat. Ann. § 22–4513, as enacted, has already been clearly demonstrated, the *Jackson* opinion suggested that a conclusive test for determining whether a statute needlessly chilled the exercise of a defendant's constitutional rights was the existence of a reasonable alternative procedure for accomplishing the same valid State purpose which motivated the enactment of the statute in the first instance. Thus the question now becomes whether the legislative goal could have been accomplished without needlessly chilling the rights of indigent defendants. The answer is quite obviously yes. All that was necessary was to enact the statute in such a way as to eliminate those defendants who would remain indigent for a reasonable time after trial, and yet still allow the State the means of proceeding against those who later become capable of repayment.

Similar cases which evaluated situations where ability to pay was not considered have not been kind to defendants' position. *United States v. Estrada de Castillo,* 549 F.2d 583, 584 (9th Cir. 1976); *Jones v. State,* 360 So.2d 1158 (Fla.App.1978); *State v. Hess, supra,* 541 P.2d at 1224. In *Commonwealth v. Opara, supra,* 362 A.2d at 312–314, the court stated:

> The right of an indigent accused to free counsel is established. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). It is also established that action by the state that unnecessarily chills the exercise of a constitutional right is invalid. *See, e. g., United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). The possibility of being subjected at the close of trial to an arbitrary determination as to ability to pay for the services of appointed counsel, without any of the protections afforded by a hearing comporting with due proc-

---

1. Other law journal discussions of the recoupment problem include: *Note,* 30 Baylor L.Rev. 393 (1978); *Note,* 60 Cornell L.Rev. 670 (1975); *Note,* 49 Tul.L.Rev. 699 (1975); *Note,* 11 Wake Forest L.Rev. 490 (1975); *Note,* 14 Washburn L.Rev. 146 (1975); *Comment,* 67 Mich.L.Rev. 1404 (1969); *Note,* 53 J.Urban Law 89 (1975).

ess, may lead persons truly indigent and therefore eligible for free counsel to choose to forgo counsel initially. While it is true that the Supreme Court in *Fuller v. Oregon, supra,* rejected the "chill" rationale propounded by the California Supreme Court in *In re Allen,* 71 Cal.2d 388, 78 Cal.Rptr. 207, 455 P.2d 143 (1959), it did so in the context of a case in which it was dealing with a reimbursement statute "carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work 'manifest hardship' are forever exempt from any obligation to repay." *Fuller v. Oregon, supra,* 417 U.S. at 53, 94 S.Ct. at 2124. "Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship." *Id.* at 54, 94 S.Ct. at 2125. Justice Douglas in his concurring opinion noted that it was this narrow construction of the statute with its limitations on imposing such an obligation that disposed of the "chill" argument. *Id.* at 56, 94 S.Ct. 2116. (Justice Douglas also noted that the statute placed limits on the amount to be reimbursed, except for extraordinary circumstances, *Id.* at 55 n. 2, 94 S.Ct. 2116.) In the present case, not only is there no such "carefully tailored" statute, the lower court itself failed either at the time of hearing or in the provisions of its order to afford appellant any of the safeguards emphasized in *Fuller. Compare State v. Barklind,* 12 Wash.App. 818, 532 P.2d 633 (Div. 1, 1975) (probation order of reimbursement, though made without express statutory authorization, did not chill exercise of right to counsel and is valid in that "[e]ven without a statute, the trial court met all of the requirements of the constitution and adhered to the principles of fairness delineated in *Fuller* . . .", 12 Wash.App. at 821, 532 P.2d at 636) with *State v. Hess,* 12 Wash.App. 787, 532 P.2d 1173 (Div. 2, 1975) (similar order

violated state constitutional right to counsel, court noting total absence of safeguards of *Fuller*). *See, People v. Amor,* 12 Cal.3d 20, 114 Cal.Rptr. 765, 523 P.2d 1173 (1974), distinguishing *In Re Allen, supra,* in that because of a statutory provision for reimbursement defendant in *Amor* had prior notice of reimbursement possibility, that she would be required to reimburse only that amount which the court determined she had the ability to pay and by the terms of the statute she could not be imprisoned for nonpayment (execution issuable only as on a judgment in a civil action). *Id.* 114 Cal.Rptr. at 768, 523 P.2d at 1176.

Where neither the order nor the proceeding out of which it arose contains assurance that only those able to repay will ever be required to there is a real danger that some may choose to forgo their right to appointed counsel. This being so, such an order is invalid in that it unnecessarily infringes on the right to counsel. Action by the state which unnecessarily chills the exercise of a constitutional right is invalid. *U. S. v. Jackson, supra.*

These decisions are consistent with the holding of the three-judge court of this District in *Strange v. James, supra,* 323 F.Supp. at 1234. While that decision is clearly undermined to some extent by the Supreme Court's *Fuller* opinion, we believe that the rationale is still applicable except in situations where the safeguards of the Oregon statute, listed above, are present. Thus, in *State v. Hess, supra,* 541 P.2d at 1224, the Washington Supreme Court set aside a condition placed upon probation that defendant reimburse the county for fees of his court-appointed counsel, stating:

Underlying the *Fuller* decision is a concern that indigent defendants might be discouraged from utilizing court-appointed counsel where repayment for such services could later be required *without regard to the defendant's particular circumstances.* Similarly, in [*State v.*] *Eide* [83 Wash.2d 676, 521 P.2d 706 (1974)] we were concerned primarily with the ab-

sence of standards sufficient to protect the defendant against an arbitrary imposition of costs. That concern remains. We have no statute which sets forth guidelines for requiring the repayment of court-appointed attorney fees, and the condition placed upon defendant's probation in this case cannot stand. (emphasis supplied)

And in *Annot.,* 79 A.L.R.3d 1025, 1037 (1977), it is noted:

Although it was faced with a probation condition that required an indigent to reimburse the government for court-appointed counsel only if he had the ability to do so, the United States Supreme Court strongly suggested in *Fuller v. Oregon* (1974) 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642, that the condition was valid *because* it was limited by the ability to pay. (emphasis supplied)

Where a statutory scheme takes into account the ability to pay of a defendant who has been furnished counsel, it does not chill the right to counsel, as explained in *Fuller.* However, where ability to pay is not considered and a judgment is entered automatically, as in Kansas, the reasoning of *Strange v. James* still holds sway:

In practical effect, this statutory condition on an indigent accused's acceptance of court appointed counsel returns the indigent accused to the lawyerless position he occupied prior to the decision in *Gideon v. Wainwright,* supra. For if an accused has not the means to hire an attorney in the first instance, he will not be in a position to accept court appointed counsel when it merely means that he has at most ninety days grace in paying the cost of legal services rendered on his behalf. [323 F.Supp. at 1232]

Because the Kansas recoupment statute does not exempt those unable to pay from the obligation to do so, it suffers much the same defect as it did when invalidated by the Supreme Court in *James v. Strange* where the Court (as we have already noted) said:

State recoupment laws, notwithstanding the state interests they may serve, need not blight in such discriminatory fashion the hopes of indigents for self-sufficiency and self-respect. The statute before us embodies elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law. [407 U.S. 141–142, 92 S.Ct. 2035]

There is an obvious similarity between the moderately indigent defendants who before *James v. Strange* could lose most of their property because they were not entitled to the statutory exemptions granted other civil debtors and a completely indigent defendant who under the present version of the law will have a judgment automatically rendered against him despite an almost total lack of worldly possessions.

This failure to exempt from judgment those unable to pay clearly distinguishes the Kansas law from that approved by the Supreme Court in *Fuller v. Oregon.* The Supreme Court's final words in the *Fuller* opinion, repeated for emphasis, were as follows:

. . . Oregon's recoupment statute merely provides that a convicted person *who later becomes able to pay* for his counsel may be required to do so. Oregon's legislation is tailored to impose an obligation *only upon those with a foreseeable ability* to meet it, and to enforce that obligation only against those who *actually become able* to meet it without hardship. (emphasis added) [417 U.S. at 54, 94 S.Ct. at 2125]

█ In support of Kansas' statutory scheme, defendants make several arguments. It is argued that because the Kansas legislature has eliminated the defects in the statute isolated in the Supreme Court's decision in *James v. Strange,* the statute is now valid. The Kansas recoupment statute, it is argued, now passes constitutional muster because the fact that all civil debtor exemptions are applicable prevents a defendant from suffering the "manifest hardship" about which the Court was concerned in *Fuller v. Oregon, supra,* 417 U.S. at 53, 94 S.Ct. 2116.

We recognize such decisions as *Wicks v. City of Charlottesville,* 215 Va. 274, 208

# 1079

S.E.2d 752, 756–757 (1974), which held without much discussion that the exemptions for debtors in the Virginia Code adequately protected defendants from hardship. However, we subscribe to the view taken by the Washington Supreme Court in *State v. Barklind, supra,* 557 P.2d at 318:

> The assets protected by the exemption statutes really have no relation to the hardship caused by allowing all assets above their standards to be seized.

Defendants next argue that the recoupment statute, K.S.A. 1978 Supp. 22–4513 must be regarded as completely separate and distinct from the law, K.S.A. 1978 Supp. 21–4610(k) which allows recoupment to be made a condition of probation. Although the bulk of the reported cases have involved situations where repayment was made a condition of probation, such was not involved in *Strange v. James, supra,* 323 F.Supp. at 1230. Thus, in the eyes of that three-judge court, the distinction which defendants attempt to draw did not save the Kansas statute. The entry of judgment, whether or not made a condition of probation, may chill the right to counsel. Further, defendants fail to recognize that these two statutory provisions interact and have the same purpose. As recognized in *Fuller v. Oregon, supra,* recoupment could be made a proper condition of probation under K.S.A. 21–4610(k) if only the obligation to repay were imposed under the constitutionally-allowable conditions described in the *Fuller* opinion.

Defendants further argue that no constitutional provision exempts those unable to pay their debts from doing so. Therefore, it is argued, there should be no relief to the plaintiff class members who merely stand in the shoes of any indigent civil debtor. This argument simply does not take cognizance of chilling effect upon the right to counsel and the denial of equal protection vis-a-vis defendants who can afford counsel that are recognized in the many cases discussing recoupment statutes. It is the fact that these defendants face criminal charges that distinguishes them from other civil debtors.

■ Defendant also asks that we read a standard of "reasonableness" into the statute, apparently recognizing that the statute does not explicitly contain such a standard. In *United States v. Bracewell,* 569 F.2d 1194, 1197 (2d Cir. 1978), the court was concerned with 18 U.S.C. § 3006A(f), which provides for recoupment where the court finds funds "are available" for payment. The Court applied a reasonableness standard, stating:

> The question, in our view, is whether the funds appropriated by the Government were, in fact, "available for payment" within the meaning of the statute. This, of course, is a statutory condition which must be met before an order of reimbursement is properly granted. . . .
> We think that in a case such as this, the district court is obliged to conduct an inquiry into the defendant's personal and familial financial status, and to make a finding on the record that the funds being appropriated to repay counsel costs are "available" for that purpose.

We have no such flexibility in this case, because the Kansas statute is not sufficiently ambiguous to allow us to imply a "reasonableness" standard. K.S.A. 1978 Supp. 22–4513 is not ambiguous; it mandates the entry of judgment without allowing the trial judge to determine whether the defendant has funds "available." The *Bracewell* court would not sanction such a procedure:

> Were we to sanction the granting of a motion for reimbursement solely upon demand by the Government, without requiring an appropriate inquiry into the defendant's financial position, we would be condoning the functional equivalent of Kansas's unconditional obligation imposed upon a criminal defendant, which was found constitutionally infirm in *James v. Strange, supra.* [569 F.2d at 1198–1199]

Finally, defendants recognize that the Kansas statutory scheme allows unconstitutional practices, but argue that the various judges of the state would not engage in such practices because "it would be uncon-

stitutional." For example, at page 6 of defendants' latest brief, it is argued in relation to the law's allowing a judge to make recoupment a condition of probation without regard to ability to pay:

It is unimagineable [sic] that a trial court judge would harshly impose such a condition upon a distitute [sic] defendant. Indeed, if he did he would surely run afoul of the dictates of essential fairness required by the Fifth and Fourteenth Amendments and perhaps the Eighth Amendment ban of cruel and unusual punishment.

Defendants' argument, it appears to the Court, is that the Kansas law allows such outrageously unconstitutional practices that no judge would engage in them. In essence, defendants argue that the law is so unconstitutional that it is constitutional. The Court has some difficulty in following this logic.

The Kansas law mandates the entry of a recoupment judgment against the defendant. The law makes absolutely no provision for a consideration of the individual circumstances of the defendant. *As it stands, K.S.A. 1978 Supp. 22–4513 violates the right to counsel and right to equal protection of indigent defendants in this State.* These defendants may very well forego the right to counsel knowing that a judgment will inevitably be entered against them regardless of their ability to pay. We do not reach the other grounds of unconstitutionality raised by plaintiffs. An amendment which would require that ability to pay be considered in the rendition of any judgment would remedy the constitutional defects which we address. Specifically, we do not reach the due process issue although obviously it would be preferable if the due process provisions read into the law by the Kansas Supreme Court in *Keener* actually appeared in the law and in practice. Neither is the case now.

We recognize that our decision is at odds with Judge O'Connor's decision in *Arney v. James, supra.* An appeal in that case is presently pending before the Tenth Circuit. Hopefully, the Tenth Circuit's decision will resolve the conflict in decisions that now exists in the District of Kansas. We doubt that the *pro se* plaintiff in *Arney* presented the issues in as clear a light as has plaintiff's counsel in this case.

We do not reach any of the individual damage issues presented in this case. Counsel for plaintiffs is directed to draw an injunction order for the Court's approval which shall be effective upon the date of its filing. Counsel for defendants should be consulted in the drawing of said order.

IT IS THEREFORE ORDERED that to the extent reflected herein, plaintiffs' motion for partial summary judgment be granted and defendants' motion for summary judgment be denied.